## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **DARREN TODD MCDONALD,** | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:18-cv-1088-CLS** |
| | ) | |
| **NANCY A. BERRYHILL, Acting Commissioner, Social Security Administration,** | ) ) ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Claimant, Darren McDonald, commenced this action on July 16, 2018, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying his claim for a period of disability, disability insurance, and supplemental security income benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ failed to properly develop the administrative record, and failed to properly consider new evidence presented for the first time to the Appeals Council, the effects of claimant's obesity, and the significance of his long work history. The court finds merit in claimant's arguments about the ALJ's consideration of his obesity.

Claimant testified during the administrative hearing that he stood 5'10" and weighed 324 pounds.[1] There is no dispute that he is obese. The ALJ was therefore required to evaluate the effect of claimant's obesity on his residual functional capacity in accordance with Social Security Ruling 02-1p, which states the following:

> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balancing, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

> The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.

---

[1] Tr. 240.

An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.

The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

For a child applying for benefits under title XVI, we may evaluate the functional consequences of obesity (either alone or in combination with other impairments) to decide if the child's impairment(s) functionally equals the listings. For example, the functional limitations imposed by obesity, by itself or in combination with another impairment(s), may establish an extreme limitation in one domain of functioning (*e.g.*, Moving about and manipulating objects) or marked limitations in two domains (*e.g.*, Moving about and manipulating objects and Caring for yourself).

As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.

SSR 02-1p, 2000 WL 628049, at *6-7.

The ALJ listed morbid obesity as one of claimant's severe impairments.[2] She

---

[2] Tr. 14.

also discussed instances where claimant's obesity was noted in his medical records.[3]

Despite those recitations, the ALJ did not mention Social Security Ruling 02-1p, much less engage in the analysis required by that Ruling. She did not discuss whether and how claimant's obesity affected his exertional, postural, manipulative, or environmental functioning, his ability to concentrate, his social functioning, or his ability to sustain functioning over periods of time. As such, the court lacks sufficient information to determine whether the ALJ's residual functional capacity finding was in accordance with applicable law and supported by substantial evidence. Remand is warranted for a full evaluation of the effect of claimant's morbid obesity on his functional abilities.

An appropriate order will be entered contemporaneously herewith.

DONE this 1st day of April, 2019.

United States District Judge

---

[3] *See* Tr. 17 ("Treatment records from Dr. Chestang show that the claimant was being treated for hyperlipidemia, *morbid obesity* and essential hypertension as far back as April 2012 . . . "When the claimant was treated for a simple respiratory infection in March 2015, his essential hypertension was noted to be 'stable' in nature and the only significant abnormality during his physical examination was his body mass index of 42.04, which is indicative of *morbid obesity* . . . .") (emphasis and ellipses supplied), 18 ("The claimant was diagnosed [by Dr. Patel] with essential hypertension, hyperlipidemia, *morbid obesity*, GERD, lumbar radiculopathy and peripheral vascular disease. . . . The only other abnormality noted during his physical examination was his body mass index of 45.34, which, again, is indicative of *morbid obesity* . . . .") (alterations and emphasis supplied), 19 ("The evidentiary record also clearly documents the claimant's *morbid obesity*, hypertension and allegations of back pain as far back as August 2012, although even in the presence of these conditions, the claimant worked and earned above substantial gainful activity levels in 2012, 2013, 2014 and 2015.") (emphasis supplied).

4